(No. 30802.—

VINCENT O'BRIEN, Appellee, *vs.* WILLIAM R. BROWN, Appellant.

*Opinion filed March 24, 1949—Rehearing denied May 11, 1949.*

CRAMPTON, J., dissenting.

WILLIAM R. BROWN, of Chicago, for appellant.

MCCARTHY & LEVIN, of Chicago, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Appellee, Vincent O'Brien, sued appellant, William R. Brown, in the superior court of Cook County to recover three times the amount of overcharge for rent exacted by appellant, as authorized by the Emergency Price Control

Act and amendments thereto, and attorney fees. (50 U.S. C.A. App. sec. 925(e).) After the evidence was concluded the judge directed the jury to find the defendant had demanded and received $1320, in violation of such statute. The court entered judgment against defendant for the amount of $3960, and an additional amount of $500 fixed by the court as reasonable attorney fees. On a counterclaim of defendant the court directed the jury to find the issues thereunder for plaintiff. The defendant throughout the pleading and trial claimed that the Emergency Price Control Act was unconstitutional, and raised other constitutional questions, and consequently appeals directly to this court. *Groome* v. *Freyn Engineering Co.* 374 Ill. 113.

For a proper understanding of the questions involved a full statement of the pleadings and facts is necessary. Defendant leased to plaintiff a residence property in Chicago for the term October 1, 1941, to September 30, 1943. In like manner the premises were let to plaintiff by a second lease for the two-year term October 1, 1943, to September 30, 1945. The provision for rent was, in both leases, identical:

"First. Lessee shall pay to lessor, at the office of lessor, or designated agent, the rent per month of One hundred twenty-five dollars ($125.00) in advance, for the term created by this lease."

Plaintiff remained in possession of the premises after notice from his landlord in August, 1945, that the lease would not be renewed. He stayed in possession until May 20, 1946, tendering to defendant the sum of $125 for each month of the occupancy beyond the end of the term of the second lease through April, 1946. These tenders were refused. At all times stated the maximum rent for the leased premises as fixed by the Emergency Price Control Act of 1942, the regulations thereunder, and the registration statement filed by the landlord with respect to these premises was the sum of $125 per month, being the amount

for which the premises were rented on the controlling date of March 1, 1942.

On January 24, 1946, the defendant landlord commenced an action in the Municipal Court of Chicago against his tenant, the plaintiff herein. This action was for liquidated damages at the rate of $10 per day for each day of occupancy beyond the expiration of the term ending September 30, 1945. The provision of the lease upon which this action was predicated reads as follows:

"Seventh. At the termination of this lease, by lapse of time or otherwise, the party of the second part shall yield up immediate possession to the party of the first part and shall deliver the keys to the demised premises to said first party or his agent at the place where rent is payable, and failing so to do, shall pay as liquidated damages for the whole time said possession is withheld the sum of ten and no/100 dollars ($10.00) per day."

In this action for liquidated damages the lessee filed a motion to dismiss on the ground that by virtue of the Emergency Price Control Act of 1942, as amended, and the rent regulations thereunder, such damages were not recoverable, as the effect would be to permit the recovery of rent higher than that permitted by the Office of Price Administrator. The motion was sustained in the municipal court and the action dismissed. The plaintiff in that action perfected an appeal to the Appellate Court. On November 22, 1946, while that appeal was pending, and before the brief of the lessee-defendant was due, he wrote to the appellant there, the landlord, a letter partially reviewing their mutual dealings and contentions, and concluding thus: "I hereby tender to you $2320, in United States currency, being, as hereinabove set forth, the amount of your claim. In making this tender I do not admit the validity or legality of your claim. * * * More specifically, and without limiting the foregoing, I reserve any and all rights which I may have, by virtue of this tender and payment, under the Emergency Price Control Act of 1942, as amended,

and the Price Control Extension Act of 1946." The money thus tendered was accepted by defendant, and its receipt noted on the letter of tender.

Thereafter, on November 27, 1946, the tenant, O'Brien, made a motion in the case pending in the Appellate Court that the appeal be dismissed as moot, since the tenant had paid $10 per day for each of the 232 days of his possession of the premises beyond the term granted by the last lease. This motion was taken with the case by the Appellate Court after the landlord filed countersuggestions to the effect that the controversy involved the construction of the Emergency Price Control Act of 1942, and the tenant's rights or lack of rights thereunder, which should be passed upon by the Appellate Court. The Appellate Court later dismissed the appeal as presenting a moot question.

On January 10, 1947, the present action was initiated by complaint in the superior court for three times the amount of the alleged overcharge of $1320, and for a reasonable attorney's fee, as provided in the Emergency Price Control Act. (50 U.S.C.A. sec. 925(e).) The overcharge was calculated as being the difference between the $2320 paid, and the alleged permissible maximum rent for the eight months, October through May, 1946, at the rate of $125, or $1000. The answer of the defendant landlord, as amended, raised the defenses that the rent was not $125 per month, but $3000 for a two-year term, payable at the rate of $125 per month; that the superior court had no jurisdiction of the action; that the action was not brought within one year of the alleged violation; that the Emergency Price Control Act was unconstitutional, as it deprives the defendant of trial by jury, contrary to the constitutions of the United States and of the State of Illinois; and that the circumstances of the payment and the opinion of the Appellate Court estop the tenant from claiming that the payment was in fact anything other than liquidated damages for withholding possession.

The defendant landlord counterclaimed for damages for certain expenses of his former legal proceedings, together with amounts necessarily expended by him to put the premises in repair. This counterclaim as amended was based upon this provision of the lease:

"Third. Second party agrees to pay for any and all repairs that shall be necessary to put said premises in the same condition as when he entered therein, reasonable wear and loss· by fire excepted, and that the expense of such repairs shall be included within the terms of this lease and judgment by confession entered therefor.

"The party of the second part further covenants and agrees to pay and discharge all reasonable costs, attorney's fees and expenses that shall be made and incurred by the party of the first part in enforcing the covenants and agreements of this lease."

By answer to the counterclaim and the reply thereto the lawfulness of plaintiff's failure to surrender possession, and the validity of paragraph 7 of the lease under the Emergency Price Control Act and rent regulations, were put in issue.

At the time of filing his answer defendant had requested a jury trial. After the pleadings noted, defendant moved for judgment on the pleadings, raising the same legal questions as were raised by the amended answer. This motion was denied. After a trial before a jury, in which most of the facts stated above were admitted, the trial court at the close of all the evidence directed the jury to find that as to the issues on the complaint the defendant had demanded, and received, from the plaintiff $1320 in violation of the Emergency Price Control Act.

On the counterclaim the original plaintiff had been called for cross-examination by counterclaimant. Plaintiff testified to numerous instances of disrepair of the premises when he moved, some of which ·appear to be covered by the third clause of the lease. The witness was not asked questions going to the reasonable cost of repair, but the lease obligated lessee to pay "the expense of such repairs"

without limitation. The counterclaimant then offered in evidence the demand for a bill of particulars made by original plaintiff, to particularize the counterclaim, and the sworn bill of particulars filed in response to this demand, to which no sworn denial had been made by counter-defendant. On the objection of the defendant to the counterclaim these documents were not admitted in evidence. There was no other evidence offered by counterclaimant to support his counterclaim for some $3000, which is the total of the items of repairs and payments therefor set out in the bill of particulars, but the record shows that previously he had promised to connect the testimony of O'Brien with the counterclaim.

The trial court directed the jury to return a verdict on the counterclaim against the counterclaimant. Judgment was entered for the original plaintiff for $3960 damages, being three times the $1320 over-charge, as directed to be found by verdict, together with an attorney's fee of $500. Judgment was entered that counterclaimant take nothing by his counterclaim.

By motion for judgment notwithstanding the verdict defendant had further particularized the constitutional objections, questioned the jurisdiction of the superior court and of a judge of that court to set the attorney fees and to treble the actual damages found by jury; pointed out that the Emergency Price Control Act of 1942, as amended, expired June 30, 1946, and the payment of the supposed overcharge was not made prior to that time; and that plaintiff did not bring this action until more than thirty days after the payment was made, and failed to prove that the Price Administrator had not brought an action on behalf of the United States for the same payment prior to institution of the action by plaintiff as an individual. A like motion was made as to that part of the impending judgment disposing of the counterclaim. The ground assigned was that the items of the sworn bill of particulars

were admitted by failure of the counterdefendant to file a sworn denial. Counterclaimant relied upon section 37(3) of the Civil Practice Act. (Ill. Rev. Stat. 1947, chap. 110, par. 161(3).) After denial of these motions for judgment defendant and counterclaimant further preserved his objections and defenses by motions for new trials on the complaint, and he appeals, praying a reversal of the judgment both on the complaint and the counterclaim.

Defendant's principal argument is that the maximum rent was $3000 for a two-year term, not $125 per month. There are two answers to this. The first is the lease, which recites, "Lessee shall pay * * * the rent per month of One hundred twenty-five dollars * * * for the term created by this lease." The rental was not for the term, payable in 24 monthly installments. It was for each month, for the duration of the term. Secondly, the tenant did not hold over for a term of two years. He was a tenant against the will of the landlord by reason of the provisions of the statute, and the landlord was demanding, and did later accept, a surrender of the term, by whatever tenancy the tenant held.

This first argument is connected with the last defense raised by the amended answer, that the tenant was estopped to deny that the payment of November 22, 1946, was for liquidated damages and not for rent. It makes no difference under the act what the payment is called, nor even that the tenant might himself have called it damages. His characterization of it, or his willingness, or even eagerness to pay it, does not prevent its recoupment. One of the pertinent regulations makes any supposed waiver of his rights by a tenant void. (10 Fed. Register 13528, sec. 1(d).) Furthermore, "rent" is defined in the act as the consideration demanded or received in connection with the use or occupancy of any housing accommodations. (50 U.S.C.A. App. sec. 942(g).) The fundamental weakness in the landlord's position is his assumption that the occu-

pancy after September 30, 1945, was unlawful. The Emergency Price Control Act and the regulations thereunder were designed and expressly intended to "freeze" the occupancy of premises covered. The landlord here was in the company of thousands of others who had tenants who could lawfully occupy as long as they paid the rent. Rent Regulations for Housing, sec. 6.

Section 7 of the lease must be considered in connection with section 1(c) of the regulations: "The provisions of any lease or other rental agreement shall remain in force pursuant to the terms thereof, *except insofar as those provisions are inconsistent with this regulation.*"

It appears from the record that appellant on February 19, 1946, filed a forcible entry suit in the municipal court against appellee to obtain possession of the premises, and on April 2, 1946, said court entered a finding and judgment that Brown take nothing by his suit. This was an adjudication that the possession by O'Brien was not unlawful. (*Western Book and Stationery Co.* v. *Jevne*, 179 Ill. 71; *St. Louis National Stock Yards* v. *Wiggins Ferry Co.* 112 Ill. 384.) One of the grounds upon which the municipal court could have so held was that Brown could not eject the tenant from the premises by reason of the provisions of the Price Control Act. The Price Control Act does not confine itself to the conventional definition of "rent," but for the purpose of the act defines rent as the consideration for the *use or occupancy of housing accommodations.* (Sec. 942(g).) The regulations as above stated make all provisions of a lease inconsistent therewith ineffective. (Sec. 1(c).) Because of these provisions in the law the seventh clause of the lease, providing for the payment of $10 per day, became inconsistent with the regulation that the same rent be charged for the overtime as that regularly reserved, and consequently ineffective. It is a play upon words to say this is damages, when the daily amount accrues from "use or occupation." The law fixed the rent for

overtime, which could not be increased, and consequently to the extent that it was accepted by Brown in excess of $125 per month it was illegal. (*Taylor* v. *Bowles*, 145 Fed. 2d 833; *Taylor* v. *Bowles*, 147 Fed. 2d 824; *Taylor* v. *Porter*, 156 Fed. 805.) These cases are all decided by the Emergency Court of Appeals, which is given exclusive jurisdiction to pass upon the validity of regulations. Sec. 204(d).) We are satisfied appellant received from appellee rent as defined by the act in excess of that fixed by the Price Administrator.

The defense that the superior court had no jurisdiction of this action is argued by appellant, and should be by us considered in connection with his defense that the act, as here applied, violated his constitutional right to trial by jury. Appellant concedes that jurisdiction of the subject matter is the power to hear and determine cases of the general class to which the action belongs. The power of courts of this State to entertain actions for the recovery of treble damages, the right to which is conferred by act of Congress, was decided adversely to appellant in *Regan* v. *Kroger Grocery & Baking Co.* 386 Ill. 284, where we said: "The laws of Congress are as much the laws of this State as the enactments of our own legislature. Article VI of the Federal Constitution provides: 'This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby * * *.' Congress has power to confer jurisdiction on State courts. (*The Moses Taylor*, 4 Wall. 411; 18 L. ed. 397; *Stewart* v. *Kahn*, 11 Wall, 493, 20 L. ed. 176.) It also has the power to regulate procedure in State courts in the enforcement of Federal laws. *Clark* v. *Mechanics Nat. Bank*, 282 Fed. 589; *Konkel* v. *State*, 168 Wis. 335, 170 N.W. 715; *Erickson* v. *Macey*, 231 N.Y. 86, 131 N.E. 744."

Appellant argues, however, that the decision there was under the act before an amendment in 1944. Prior to that amendment the addition to compensatory damages, or the amount of overcharge, of an amount treble the overcharge was mandatory and automatic. Appellant argues that under the act as amended the liability being for an "amount not more than three times the amount of the overcharge," and to be fixed "as determined by the Court," the imposition of damages by the judge at some figure between the overcharge and three times that amount deprives him of trial by jury.

The opinions in *Shearer* v. *Porter, Price Admr.*, 155 Fed 2d 77, and *Povlich* v. *Glodich*, 311 Ill. 149, show that the constitutional right argued for is not impaired when the amount of damages is found by a court, after a jury or a pleading has established a factual basis out of which damages arise. The guaranty of the constitution is "the right of trial by a jury as heretofore enjoyed." This means the right as it existed at common law. At common law an assessment of damages is an inquest of office, usually performed by the sheriff upon a writ of inquiry of damages, or might be assessed by the court. It has been distinctly held that assessment of damages is not a trial, and does not come within the provisions of the constitution. (*George* v. *People*, 167 Ill. 447; *Vanlandingham* v. *Fellows*, 1 Scam. 233; *Kassing* v. *Griffith*, 86 Ill. 265; *Phoenix Ins. Co.* v. *Hedrick*, 178 Ill. 212; *Povlich* v. *Glodich*, 311 Ill. 149.) The general constitutionality of the Price Control Act has been sustained in *Bowles* v. *Willingham*, 321 U.S. 503, 88 L. ed. 892; *Yakus* v. *United States*, 321 U.S. 414, 88 L. ed. 834, and we are satisfied the points urged here would not cause those cases to be overruled.

Appellant raises another point of more difficulty. It is his contention that there was no violation of the Price Control Act. O'Brien paid the $2320 on November 22, 1946.

The Emergency Price Control Act terminated on June 30, 1946, by its own terms, and therefore appellant says there could be no violation for payment of excess rent after the act had terminated. Appellee counters by showing that the original act was extended to June 30, 1947, by the joint resolution of Congress, approved July 25, 1946. Section 1 of this act reads: "That section 1(b) of the Emergency Price Control Act of 1942, as amended, is amended by striking out 'June 30, 1946' and substituting 'June 30, 1947.'" The original act of 1942 has in it a saving clause to the effect that liabilities incurred thereunder shall be treated as remaining in force for the purpose of sustaining a suit for violations thereof. Both the act of 1942 and that of 1946 contained a provision making the seller of a commodity (rent) liable for the violation of a regulation or price schedule in a sum not to exceed three times the amount of the overcharge, and in addition reasonable attorney fees and costs, as determined by the court. Sec. 925(e).

While the 1946 extension is declared to be in effect continuously from 1942 until 1947, there is a period between June 30, 1946, and July 25, when there was no Price Control Act in existence. However we do not have to decide the effect of a violation during this period because none occurred within it. Appellant claims he was not liable under the 1942 act because the excess money was received in November, 1946, and had there been no Price Control Act in effect at the latter date there would be force to his contention. However, the act of July 25, 1946, was in effect, creating the same liabilities as the act of 1942, and appellant has not shown any reason why a rent violation occurring under the extended act may not be enforced. The money was received because of the use and occupancy of the same premises which were leased in 1941, and appellant's demands continued until the payment for use and occupancy was concluded, at a time when there was an effective law prohibiting it. While involving a

different section of the law, the conclusion above is fortified by *150 East 47th Street Corp.* v. *Porter,* 156 Fed. 2d 541.

Appellant also contends plaintiff was estopped to sue because he paid the money voluntarily, and as liquidated damages under the lease. The answer is obvious. The clause of the lease upon which Brown demanded $10 per day was ineffective by reason of the regulations so providing, (Rent Regulations for Housing, sec. 1(d),) and if payment constituted an implied agreement not to sue under ordinary circumstances, yet, when the regulations make any agreement waiving their enforcement void, the principle of estoppel may not be invoked to destroy the object which the law intended to remedy.

Appellant has argued other points, mostly ancillary to the main ones, to which we have given careful attention, but not needful to discuss in an opinion already long. We hold the trial court committed no error in any of its acts resulting in the judgment for triple damages and attorney fees on the original complaint.

Appellant also assigns error because the court directed a verdict for the defendant on his counterclaim, refusing a new trial on this issue, and entering judgment that he recover nothing on such counterclaim. This counterclaim is based on clause 3 of the lease, set out above, wherein appellee agrees to pay for all repairs of the premises to put them in the same condition as when entered, usual wear excepted, and that the *expenses* of such repairs are included in the terms of the lease.

To maintain the counterclaim the lease was in evidence; the plaintiff, called to the stand, identified certain of the items of disrepair, and thereupon appellant offered in evidence his sworn bill of particulars of the expenses he had paid, itemizing them. This bill of particulars was not denied under oath by the plaintiff. The court sustained an objection to appellant's offer, and no further evidence being given the court directed a verdict against appellant,

the counterclaimant. Section 37 of the Civil Practice Act (Ill. Rev. Stat. 1947, chap. 110, par. 161(3)) provides: "Whenever a bill of particulars, in an action based on a contract, contains the statement of items of indebtedness and is verified by oath, the items thereof shall be deemed admitted except in so far as the opposite party shall file an affidavit specifically denying the same, and as to each item denied, stating the facts upon which such denial is based, unless such affidavit is excused by the court." It will be noted that the statute provides in case of no denial under oath as to each item, *such items shall be deemed admitted.*

The bill of particulars contained over thirty items, describing in detail the amount of the expense paid, and the purpose for which it was paid,—for illustration, the following items:

> "6/5/46
> Eddie Henderson, 11534 Watkins, Chicago, Ill.
> Labor in cleaning rubbish from yard and cleaning
> wood work and floors in house                                  $207.50
> Cleaning materials                                                    10.39"

On this matter O'Brien testified he left cans and other debris in the garage, and that the flower beds along the walk and along the curb were grown up in weeds. He moved May 6.

Thus, taking these items alone, the following was evidenced: (1) Under the third clause the making of the promise to pay the *expense of the repairs;* (2) the admission of the item of $217.89 expended for cleaning the premises; (3) the testimony of O'Brien admitting the premises were uncleaned. In addition, Brown offered to connect the damages to the premises with the items in the bill of particulars. After the examination of O'Brien, Brown offered in evidence the demand of plaintiff for a bill of particulars upon the counterclaim, and the bill of particulars. Counsel objected because both papers were matters of pleading, and was sustained.

It is elementary that admissions in pleading are proper evidence. It is not necessary that the jury be permitted to take the papers, but the court may point out to them such admissions as are relevant. Here the plaintiff demanded a bill of particulars; defendant was limited to proof of the matters particularized. He put in items of expense, and the purpose of expense. By sustaining the objection the court cut the ground from under the counterclaim. The court went upon the assumption that they were not admissible because they were pleadings, saying: "The pleadings cannot be used as evidence; they do not go in with the jury to the jury room." If it is true that the bill of particulars cannot be used, when the items are admitted, what was the purpose of the statute? We are not saying that as to a large part of the items they are recoverable, but the defendant had the right to show each item admitted and connect them, as he promised, to the covenant in the lease.

The court also commented upon proof of reasonable cost of repair as damages, but the promise was to pay items of *expense* paid. There was at least some evidence of amounts paid because of the alleged breach of the third covenant in the lease.

We have not heretofore passed upon the effect of section 37 of the Civil Practice Act. The laws of Michigan contain a similar provision, which was discussed in *Cohen v. Peerless Soda Fountain Service Co.* 257 Mich. 679, 241 N.W. 810. That was the case of an attorney suing for fees and itemizing his opinion of the value thereof. His bill of particulars was not denied, and the court held that the failure to deny did not admit the reasonableness of the charge. We apprehend if the attorney had sued on a contract to reimburse him for expenses, and itemized those expenses, the result might have been different. Our principal criticism is that the court by refusing to allow admissions of the plaintiff that certain items of expense, and

their purpose, had been paid, deprived the defendant of all rights the law gave him under such circumstances. He was left no foundation upon which to offer other evidence, and consequently by not being permitted to offer each item, and make proof thereof, was precluded from establishing anything to sustain his theory of the counterclaim. We are not suggesting whether any, or all of the items, would suffice to make a *prima facie* case, but they at least would furnish a foundation for the defendant to proceed with his other evidence, indicated by his offer. The court could easily have limited the manner in which the admissions of plaintiff be received by the jury. Section 92 of the Civil Practice Act authorizes the affirmance of a cause on one issue, and the reversal on another. "(1) In all appeals the reviewing court may, in its discretion, and on such terms as it deems just,—* * * (e) Give any judgment and make any order which ought to have been given or made, and make such other and further orders and grant such relief, including a remandment, a partial reversal, the order of a partial new trial, the entry of a remittitur, or the issuance of execution, as the case may require."

It is, therefore, the judgment of the court that the judgment rendered by the superior court upon plaintiff's demand be, and the same is, affirmed. It is further ordered by the court that the judgment of the superior court against the defendant on the counterclaim be reversed, and the cause remanded to that court, with directions to proceed in a manner not inconsistent with the views expressed herein.

*Affirmed in part and reversed in part and remanded, with directions.*

Mr. Justice Crampton, dissenting:

I dissent from the majority decision which in my opinion not only misapplies this statute but which lends judicial sanction to conduct in flagrant violation of elementary prin-

ciples of justice. On the principal issue the court permits the plaintiff, an attorney, to recover triple damages for an overpayment made six months after he had vacated the premises, when the relationship of landlord and tenant had ceased to exist, and with full knowledge of its illegality. It is clear that the payment was made with the intention and sole purpose of laying the basis for a lawsuit to recover triple damages under the rent control law. Indeed, plaintiff does not deny this but maintains that it is immaterial to his right thus to enrich himself.

The issue is primarily one of statutory construction. A statute of the type here involved must be construed in the light of its purpose. A literal application which would lead to absurd results is to be avoided when a reasonable interpretation can be given consistent with its words and the legislative purpose. The plain purpose of the provision authorizing recovery of three times the amount of an over-charge is to enlist the help of consumers in discouraging violations. But to interpret the statute so as to allow a recovery here where the payment is made long after the former tenant has vacated the premises, and solely as a device to gain a gratuitous reward at the expense of the property owner, serves only to encourage persons so situated to promote price violations rather than to discourage them. The result of such an interpretation is to defeat rather than to further the purpose of the statute. This is not the case of a prospective tenant, or a tenant in possession, paying an overcharge in order to acquire or retain housing accommodations. At the time this payment was made the plaintiff was neither in possession nor attempting to obtain possession. He had voluntarily abandoned the premises six months before. Under such circumstances the payment cannot, consistently with the purposes of the Act, be brought within the ambiguous phrase "in connection with" the use or occupancy of housing accommodations. It has no relation with the applicable statutory ob-

jective to "protect persons with relatively fixed and limited incomes . . . from undue impairment of their standard of living." To deny recovery in this type of case does not mean that violations will go unpunished. Adequate means of enforcement are afforded to the administrator without the necessity of converting the provision into an instrument of private aggrandizement.

While there is not a large body of judicial decision upon the exact question herein presented, this position is not without authority for its support. In *Peters* v. *Felber,* 66 Cal. App. 2d 1101, 152 Pac. 2d 42, an overcharge was paid and received in each of six months, and the tenant brought an action to recover six times the statutory penalty of $50. The court construed the statute so as to allow only one penalty "in the absence of express words indicating a clear legislative intent that they should be cumulative."

In *Tropp* v. *Great Atlantic & Pacific Tea Co.* 21 N. J. Misc. 205, 32 Atl. 2d 717, the plaintiff bought an item from defendant's store at a price above the ceiling price. After ascertaining the correct ceiling price both the plaintiff and her husband returned to the store and made further purchases as a foundation for a suit to recover the $50 penalty for each. The court denied recovery for the subsequent purchases, finding that they were not bona fide purchases for use or consumption. In its opinion the court observed that "Persons should not be permitted to succeed under this act where their only motive is to enrich themselves at the expense of the man in business."

In *Dunakin* v. *Southwestern Consumers Co-op Ass'n,* 49 N. M. 69, 157 Pac. 2d. 243, the plaintiff purchased a can of tomato juice from the defendant's store at a price in excess of the maximum, knowing at the time that the price was above the ceiling price and doing so with the intent and for the purpose of laying a basis for an action to collect the $50 penalty and attorney's fees. The court

held that the purchase, being made in bad faith, was not for use or consumption, and denied recovery. In support of its decision the court said that "it is reasonable to suppose that Congress, seeking to punish the seller of commodities in excess of ceiling prices did not intend to enlist the help of those who would be *in pari delicto,* such as informers, entrappers and those who sought to enrich themselves at the expense of those who violated the law either intentionally or unintentionally."

In the case at bar it is apparent from plaintiff's own statements in his letter accompanying the payment that it was made in contemplation of an action under the Price Control Act. It is also apparent that he knew he was violating the law; that defendant could not compel him to pay the sum; and that its payment was not necessary to enable him to acquire or retain housing accommodations. His position throughout the entire course of the controversy with defendant was that such payments would be above the legal maximum. To permit him to succeed where his purpose was not to acquire or retain housing accommodations but to consummate a violation of the law so that he might benefit by the collection of treble damages is to allow a man to take advantage of his own wrong. Regardless of the merits of the statute it requires little effort to perceive the danger of laws which confer upon private individuals the power to penalize others to their own enrichment. When confined to tenants who from ignorance or economic "duress" pay overceiling rents the section is doubtless an effective means of enforcement reasonably consistent with the intention of these current legislative enactments. But nothing in its content appears designed to suspend all processes of justice or to impair the concepts of ethics and fair dealing.

Under the above circumstances, the plaintiff should not be allowed to recover.