**BEATTY v. UNITED STATES.**

No. 14198.

United States Court of Appeals
Eighth Circuit.

Sept. 6, 1951.

318

John Connolly III, Des Moines, Iowa (Connolly, O'Malley & McNutt, Des Moines, Iowa, on the brief), for appellant.

Cecil H. Lichliter, Sp. Litigation Atty., Office of the Housing Expediter, Washington, D. C. (Ed Dupree, Gen. Counsel, and Leon J. Libeu, Asst. Gen. Counsel, Washington, D. C., on the brief), for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The United States brought suit, under the provisions of the Housing and Rent Act of 1947, as amended in 1949, 50 U.S.C.A., Appendix, § 1895, against the owner-landlord of an apartment building in the rent-controlled Des Moines (Iowa) Defense Rental Area, 12 F.R. 4331, 14 F.R. 1570, for injunction, restitution and damages, based on the making of alleged rental overcharges from four tenants for the months of March and April, 1949. The trial court granted an injunction against any further rental overcharges as to the particular property or any other housing accommodation owned or controlled by the landlord and also against violation generally of any provision of the Act; made an order of restitution in favor of the tenants for the amounts of the overcharges found; and gave judgment in damages to the United States for twice the amount of these overcharges. The landlord has appealed.

The first contention urged for reversal is that the amounts collected from the tenants during the period involved did not constitute rent but were damages allowed by the statutes of Iowa for a tenant's unlawful occupancy of property, and so were outside the operation of the Housing and Rent Act.

Code of Iowa, 1946, § 562.2, I.C.A., provides that " * * * a tenant or his assignee willfully holding over after the term, and after notice to quit, shall pay double the rental value thereof during the time he holds over to the person entitled thereto."

The term "willfully", as used in this section of the statute, has been held by the Iowa Supreme Court to mean "deliberately, with bad or evil purpose, contrary to known duty. * * * the disregard of the rights of others knowingly and with a stubborn purpose, or contrary to a known duty or without authority, and careless whether he have a right or not." Nelson v. Deering Implement Co., 241 Iowa 1248, 42 N.W.2d 522, 527. Cf. also Stewart v. Burlington & M. R. R. Co., 32 Iowa 561, 563. In short, for purposes of the statute, the term has the significance of obstinately or defiantly, with lack of reasonable regard on all the circumstances for the question of legal right or wrong.

The trial court held that the evidence did not bring the tenants' occupancy here within this definition, so that the statute could not possibly have any application, even if it might properly otherwise be entitled to operation as against the rent-control policy and prescription of the Housing and Rent Act.

It was undisputed that defendant had served each of the tenants with a 60-day notice of his desire to obtain possession and of termination of their tenancies, on the ground of his alleged intention to make substantial alterations or a remodelling of the premises. This he followed with a 30-day notice of termination and a 3-day notice to quit, under the requirements of Iowa law. Before the time fixed for quitting had arrived, however, he unsuccessfully sought to interest the tenants in buying the property from him for a cooperative housing venture. Later he advised them that he would not compel them to get out by the notice date, if they would pay him damages under the Iowa statute, instead of rent, during such period as they might stay over until they were able to locate satisfactory accommodations.

He requested each of them to sign a stipulation which was legally captioned as if it were a part of a forcible entry and detainer suit against the particular tenant in the municipal court of Des Moines. The

stipulation contained a recitation of the facts as to the notices given, an admission that the landlord was entitled to possession and that the tenant was wrongfully holding over, an agreement to vacate the premises "on or before the .. day of ......, 1949," and a consent to the entry of a judgment of ouster "at any time after the .. day of ......, 1949." Three of the four tenants involved signed such a stipulation, with the date provisions as set out above left blank, and they also made endorsement of approval on a purported judgment entry based on the stipulation. No action had then been, or as far as the record shows ever actually was, commenced against these tenants. When the fourth tenant refused to sign the stipulation, a forcible entry and detainer suit was commenced against him but this was later withdrawn and voluntarily dismissed, with the tenant allowed to continue in occupancy, the same as the other three.

All of the tenants remained in the property until around the 1st of July, 1949. The amount which it had been agreed orally between the landlord and each tenant, under the circumstances above set out, that the tenant should pay while he remained in possession of the premises, was $75 per month, which was approximately $14 more than the rent previously paid and thus not "double the rental value thereof", for which the Iowa damage statute provided. The tenants thereafter paid in this manner the sum of $75 on the first day of March and the first day of April, respectively, in advance, for a month's occupancy, in accordance with the oral agreement which they had made. Some time during April, however, the landlord's attorney notified the tenants that commencing May 1st they would not be required to pay the sum of $75 as damages but only the same amount as they had been paying prior to March 1st, which was the maximum legal rent that had been fixed for the apartments.

█ Under the Iowa Supreme Court's definition of what constitutes "willfully holding over after the term", as set out above, it is difficult to see how it can be contended that we are entitled to declare that the trial court was clearly erroneous in holding that the facts found did not constitute "willful conduct on the part of said tenants such as could justify a court to apply the double rent penalty."

The trial court further held, however, that even if the situation had been one to which the Iowa statute could have applied, it would not be possible for it to have operation under federal rent control, because any state statute "authorizing the collection of double rent from tenants holding over is superseded by the Federal Housing and Rent Act." Since the Iowa statute was in any event inapplicable to the factual situation found by the court, we do not think it necessary or appropriate to pass upon that question here.

Whether such a damage or penalty statute, administered as a judicial sanction in a case of obstinate withholding of premises —not involving a situation of personal agreement and permitted occupancy on the basis thereof, as here—conflicts with the federal rent-control act has been the subject of divergent opinion. See Stovall v. Gardner, 203 Miss. 527, 36 So.2d 163; Kruse v. Ballsmith, 332 Ill.App. 301, 75 N.E.2d 140 (which, compare with O'Brien v. Brown, 403 Ill. 183, 85 N.E.2d 685, involving use of the statute through the making of a contract, just as in the situation here, and not as a matter of judicially administered sanction); McGuinn v. McLain, 225 N.C. 750, 36 S.E.2d 377; Matkowsky v. Katz, 184 Misc. 60, 53 N.Y.S.2d 430; Ricci v. Claire, 33 A.2d 591, 21 N.J.Misc. 266. As indicated, we shall not undertake an abstract consideration of the matter here— which the question would amount to in the existing situation of inapplicability of the Iowa statute.

The next contention made is that the United States had no capacity or right to maintain an action for pecuniary recovery as to the overcharges involved. The argument is that section 205 of the Housing and Rent Act of 1947, prior to its amendment in 1949 by Public Law 31, 81st Congress, 1st Session, 50 U.S.C.A., Appendix, § 1895, granted such a right of recovery for overcharges to the tenant alone; that the 1949 amendment, allowing the United States to institute the action, if the tenant

failed to do so within 30 days from the occurrence of the violation, did not become effective until April 1, 1949, and contained no language to suggest that it was intended to have a retroactive application; and that to allow the United States therefore to bring suit for any overcharges made prior to April 1, 1949, would be giving the amendment a retrospective effect, which it was not entitled to have.

■ The general rule of course is that statutes ordinarily will be presumed to have only a prospective and not a retroactive operation unless a contrary legislative intention is apparent. But this rule does not apply to statutes which effect merely changes in remedies or modes of procedure for enforcing existing liabilities. Existing liabilities, whether they accrue before or after the enactment of such a statute, will be subjected to its operation, unless they are exempted by terms or implication, or unless the application of the statute thereto will work a gross injustice. 50 Am.Jur., Statutes, § 482, p. 505. See also Bowles v. Strickland, 5 Cir., 151 F.2d 419, 420; Bowles v. Miller, 10 Cir., 151 F.2d 992.

A majority in number of the District Courts of the country, before which the question of giving the 1949 amendment retroactive application has arisen, appear to have so applied it and to have sustained the right of the United States to maintain an action for liquidated damages as to previous violations. In this Circuit, the district judges who have had occasion to consider the question have been evenly divided in their views. See United States v. Mashburn, D.C.W.D.Ark., 85 F.Supp. 968; United States v. Bize, D.C.Neb., 86 F.Supp. 939; United States v. Mitchell, D.C.W.D. Mo., 86 F.Supp. 453; and the memorandum opinion of the trial judge in the present case, D.C.S.D.Iowa.

■ Three Courts of Appeals which have passed upon the question have all accorded the 1949 amendment retroactive application to previous violations. United States v. Gianoulis, 3 Cir., 183 F.2d 378; Miller v. United States, 5 Cir., 186 F.2d 937; Mattox v. United States, 9 Cir., 187 F.2d 406. We adopt the view of these cases that, with the cause of action or legal wrong remaining identical, the liability or damages recoverable being the same, and the limitation period for suit against the defendant standing untouched, the amendment should be treated as simply providing additional machinery for enforcing the statutory responsibility of a landlord which already existed. This further seems the more logical concept on the basis of the fact—which we have previously pointed out in Ebeling v. Woods, 8 Cir., 175 F.2d 242, 245—that the object of the recovery provisions of the Act is not merely to effect a personal disgorging of any illegal overcharges made but equally at least, and perhaps even more so, to serve as a deterrent against other such violations and also to siphon off and dissipate in the public interest the inflationary effect which such violations cumulatively would be capable of producing.

The further contention is made that the court should not in any event have granted a recovery for more than the amount of the overcharges, under the provision of 50 U.S.C.A., Appendix, § 1895, that "the amount of such liquidated damages shall be the amount of the overcharge or overcharges if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation." The trial court held that the landlord had not sustained the burden resting upon him of proving by a preponderance of the evidence the lack of willfulness on his part or the non-failure to take practicable precautions, in relation to the occurrence of the violations.

■ We can not say as a matter of law that the evidence required the trial court to find that the violations were neither willful nor the result of failure to take practicable precautions against their occurrence. We need go no further here than to point out that, though the landlord's desire to alter or remodel the premises was bona fide and his willingness to allow the tenants to remain until they found other suitable accommodations was commendable, the circumstances and manner of his purported use of the Iowa statute were

not without room for interpretation by the trial court that he was simply using the statute as a pretext for obtaining a greater rental return during the permitted occupancy and not in exaction of the penalty prescribed by law for a hostile holding-over. Thus, among other elements, the sum which he demanded for the permitted occupancy —approximately 25 percent more than the rental ceiling of the premises—had no possible relation in amount to the absolute double-rent penalty fixed by the statute and so was subject to being viewed by the court as rather reflecting what he probably thought the tenants would be willing to pay without protest or legal inquiry. Furthermore, his failure to discuss the situation with the enforcement office, in the light of the manner of his use of the Iowa statute and his summary abandonment of the exaction after two months, as well as in relation to his previous attempt to induce the tenants to buy the property for a cooperative housing venture, does not enable us to say as a matter of law that the trial court could not view the situation as involving any lack of practicable precaution.

 The final contention made is that the court should not have issued a blanket injunction on the basis of the facts against violation of the Act in any possible respect. Blanket injunctions against general violation of a statute are repugnant to American spirit and should not lightly be either administratively sought or judicially granted. The evidence here does not establish any general proclivity for unlawful conduct or any demonstrated hostility to the Housing and Rent Act in general, such as might warrant a court in inferring that there existed a reasonable likelihood that other violations unlike and unrelated to those charged would be committed. It was proper for the court to enjoin the landlord from making any further rental overcharges against tenants either of the particular property involved or of any other housing accommodations owned or controlled by him, as was done in paragraph 1(a) of the decree. But the general and unrelated prohibitions of paragraphs 1(b) and 1(c) of the decree are not entitled on the evidence to stand and will be stricken. Cf.

National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 435, 436, 61 S.Ct. 693, 85 L.Ed. 930; Woods v. Polis, 3 Cir., 180 F.2d 4, 7.

The decree is modified by striking therefrom paragraphs 1(b) and 1(c), and as so modified the judgment is affirmed.