Milton G. Schmitt, Appellee, v. Chicago Transit Authority, a Municipal Corporation, Appellant.

Gen. No. 48,451.

First District, First Division.

January 29, 1962.

William J. Lynch, William S. Allen, Paul Denvir, and Jerome Dixon, all of Chicago, for appellant.

Philip H. Corboy, of Chicago, for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

This is a personal injury case, in which defendant appeals from a $67,500 verdict and judgment for plaintiff. Defendant's appeal is grounded on contentions of prejudicial trial errors and in the giving and refusing of instructions.

Plaintiff, Milton G. Schmitt, is a physician and surgeon, licensed to practice in Illinois since 1928. He was injured in a collision with defendant's northbound bus in the intersection of Lunt and Ashland Avenues, Chicago, on the evening of October 24, 1953, at about 11:45 o'clock. Plaintiff was driving west on Lunt in his own automobile and was accompanied by Vita DePrima, his physician's assistant, and Margaret Trotsel, administrator of a hospital founded and operated by plaintiff.

The primary issue of fact was whether the green light was in plaintiff's favor when he drove into the intersection.

Plaintiff testified that: as he approached Ashland Avenue, he glanced to the left and observed headlights of a vehicle proceeding north; he entered the intersection at a speed of about 18 miles an hour; the traffic signal lights governing east and west traffic were green; a moment after his vehicle was in the intersection, and while the east and west traffic light was still green, he saw the headlights again coming from the left and just a moment after that there was a sudden impact on the left side of his car, and he became unconscious.

Vita DePrima testified that as they entered the intersection, the lights governing traffic going west on Lunt Avenue were green; there was a sudden impact on the left front side of the car; before the impact she did not see any moving vehicles in the intersection. Margaret Trotsel was deceased at the time of the trial.

The operator of defendant's northbound Ashland Avenue bus testified that: as he traveled north on Ashland Avenue, before he reached Lunt Avenue, all of the lights on the bus were lighted; he first saw the green light for northbound traffic when he was about 50 feet from the intersection, and the light remained green until he reached and entered the intersection; he saw plaintiff's vehicle westbound on Lunt Avenue when it was about five feet back of the northeast light, going at a high rate of speed, "approximately 35 to 40"; plaintiff's vehicle did not slow down before the collision, and it hit the right front post of the bus by the door; he did not blow his horn before the collision.

Another bus driver, who saw the collision as he was driving a southbound Ashland Avenue bus, testified that: he did not see plaintiff's vehicle before the collision; he first saw the northbound bus a few feet south of Lunt Avenue; the traffic lights controlling traffic on Ashland Avenue were green; he saw a cloud of dust in front of the bus, and when the dust

71

cleared away, he saw an automobile in front of the bus; at the time he saw the cloud of dust, the north and south traffic lights were still green.

Defendant complains of error in the redirect examination of plaintiff's witness, Vita DePrima. On direct examination she testified that she first noticed that the east and west traffic lights were green when plaintiff's vehicle was "somewhere in between the half block and the corner of Ashland." On cross-examination she was interrogated about an answer given by her in a discovery deposition, in which she had said, "I can't remember where the car was, but I remember seeing the green light." On redirect the court permitted interrogation as to other answers given by her in the deposition regarding when she saw the green light. Defendant asserts that this permitted the witness "to quote her own self-serving statements made before trial in order to convey to the jury that she had made the same statements before trial as she had given them in her testimony upon direct examination."

■ ■ It is not proper to ask a witness to repeat upon redirect examination statements he made upon direct examination. (Forslund v. Chicago Transit Authority (1956), 9 Ill App2d 290, 132 NE2d 801.) Proof of the out of court declarations of a witness, in corroboration of testimony given by him on the trial of the case, is, as a general rule, inadmissible, even after he has been impeached or discredited. (Chicago City Ry. Co. v. Matthieson (1904), 212 Ill 292, 297, 72 NE 443.) These rules are not in conflict with Supreme Court Rule 19–10(4): "If only a part of a deposition is read or used at the trial by a party, any other party may at that time read or use or require him to read any other part of the deposition which

ought in fairness to be considered in connection with the part read or used."

██ As defendant contends, it was never intended by this rule that unrelated questions and answers may be read, which do not explain, modify or reconcile the question and answer upon which a witness may be impeached. However, "in fairness" can be abused, and the interpretation of "in fairness" requires the use of sound discretion by a trial judge. A statement may be repetitious of or bolster up a direct examination statement, and yet may be proper in order to avoid the unfairness and distortion which can result if a party is permitted to read isolated and out-of-context portions of a deposition. Goertz v. Chicago & N. W. Ry. Co. (1958), 19 Ill App2d 261, 271, 153 NE2d 486; Smith v. City of Rock Island (1959), 22 Ill App2d 389, 397, 161 NE2d 369.

██ We have examined the questioned portion of the redirect examination in the light of the above rules. The questions and answers are related to the alleged impeachment and are on the same subject matter. We find no abuse of discretion here if, in permitting plaintiff to explain and clarify what she meant by "I remember seeing the green light," some repetition or corroboration occurred.

Another ruling of which defendant complains was the refusal by the trial court to permit it to be shown that Vita DePrima had been a party plaintiff to the instant suit, and that four days before the trial she voluntarily dismissed her suit. We think that questions concerning the former litigant status of a witness also come within the sound discretion of the trial court, and that no hard and fast rule can be announced in this area.

73

██ Here, the trial court properly allowed wide latitude in the cross-examination of Vita DePrima to show her close association and friendliness with plaintiff over a period of twenty-six years. (People v. Bote (1941), 376 Ill 264, 33 NE2d 449.) This included a showing that to some extent her association was social, that she had lent money to him, and had driven with him many times before the accident. Throughout the entire trial, her interest in and affiliation with plaintiff, past and present, were brought to the attention of the jury. Any possible undue willingness or desire to assist plaintiff was developed, in order that it could "be brought into the balance by the jury in their efforts to ascertain and declare the truth." (North Chicago St. R. Co. v. Anderson (1898), 176 Ill 635, 639, 52 NE 21.) We believe that the trial court did not commit error by prohibiting questions concerning the former litigant status of this witness.

A secondary issue of fact was plaintiff's physical condition. Plaintiff testified that due to his injuries he was required to retire in 1958 and is presently unable to carry on his occupation. This was supported by his medical witnesses. A medical witness for defendant expressed an opinion that plaintiff had "an incipient type of Parkinson's disease" and he "is able to carry on the duties of a doctor of physical medicine."

██ Defendant contends that the real motive of plaintiff in abandoning his practice was not due to plaintiff's physical condition. To support that contention defendant sought to show that the real reason plaintiff retired from practice was due to his marital difficulties, and that he used an alleged inability to work as a subterfuge in procuring a low property set-

74

tlement agreement with his wife. The court properly sustained objections to this line of inquiry and also properly denied an offer of proof by defendant to show details of plaintiff's wife's divorce action and the settlement agreement made with her in February, 1960. It would have been improper and prejudicial to plaintiff to permit proof of plaintiff's marital difficulties or of his financial negotiations with his wife. These were not matters with which the jury had any concern, or which had any proper place in the trial. Defendant had a right to cross-examine plaintiff to show his want of truthfulness if he was not a truthful man, but it was not material or proper in this case, to show the facts of plaintiff's divorce and property settlement. Chicago City Ry. Co. v. Uhter (1904), 212 Ill 174, 185, 72 NE 195; Breaden v. Kowalski (1948), 334 Ill App 78, 78 NE2d 344.

■ ■ On the issue of plaintiff's ability to work, defendant also contends that the court erred in refusing an offer of proof that a claim manager for an insurance company talked to plaintiff on February 23, 1960, and that "Dr. Schmitt told me he expected to return to some form of work possibly by September 1960 on a partial basis," and that he thought that "Lincolnwood would be the best for his practice." On cross-examination, plaintiff admitted knowing the claim manager and testified, "As to whether I ever told him I intend to go back to work in 1960, I told him I hoped to be in shape to go to work this fall. I did not tell him I intended to locate in Lincolnwood." This offer of proof included testimony as to disability and hospital insurance payments made to plaintiff. We question whether the use of the words "expected to return to some form of work," as against plaintiff's testimony that he said "I told him

75

I hoped to be in shape to go to work," amounted to an impeachment. We find no error here. Also, it was proper to exclude testimony concerning insurance disability payments to plaintiff. Hudson v. Leverenz (1956), 9 Ill App2d 96, 107, 132 NE2d 427; Hudson v. Leverenz (1956), 10 Ill2d 87, 89, 139 NE2d 255.

■■■ Another offer of proof, the denial of which defendant argues was prejudicial, related to an alleged occurrence statement made by plaintiff to the police on October 25, 1953. This statement was to the effect that he had been driving between 25 and 27 miles per hour. A clerk in the record bureau of the Chicago Police Department testified, outside the presence of the jury, that there were police records indicating that a statement had been taken from plaintiff by a policeman, but that the original statement was missing from the records of the police department. Thereupon, defendant's attorney said that he would like to make an offer of proof that an employee of the Chicago Transit Authority would testify that he made a copy of the missing police statement, this proof to be made in order that the copy of the police statement might be used to refresh the recollection of the officers who took plaintiff's statement. The police officers were not in court and were not offered as witnesses. The court stated: "They are not here, and the question is whether or not I could permit those officers if they were here to testify to a copy of a statement, that, or a report that they reportedly made at the time of the accident. That statement apparently is non-existent at the moment, at best it would be hearsay. It couldn't be used in evidence, only to refresh the officer's memory. I think that would be highly incompetent. The motion, . . . to make such proof, is denied."

76

This type of an offer of proof is not adequate for the predication of error. It is unfair to a trial judge to secure a ruling in this way on the admissibility of evidence and then, to excuse the failure to make a proper offer of proof, argue that it would have been futile to produce either the document or any of the witnesses. If defendant desired to assert error on this ruling, it should, at least, have put one of the police officers upon the stand and proceeded with interrogation far enough to show that it was necessary to refresh the officer's recollection as to what plaintiff said at the time in question. Defendant then could have attempted to use whatever means he had available to refresh the recollection of the witness and thereby place the trial court in a proper position to make a ruling. Defendant's offer of proof presented patent speculation as to what any of the witnesses might do or say. This is not a sufficient basis for error. The court's ruling was correct. (Chicago City Ry. Co. v. Carroll (1903), 206 Ill 318, 328, 68 NE 1087.) Our conclusion on this point makes unnecessary a discussion of defendant's authorities on this point.

 Defendant also contends that the court erred in the giving and refusing of instructions. Defendant tendered an instruction which included the statement: "The operator of the bus in question was not required by law to exercise the highest degree of care possible to human diligence to avoid accident." There was nothing in the evidence to lead the jury to assume that plaintiff was entitled to this degree of care. This instruction is not the same as the one approved in Kehr v. Snow & Palmer Co. (1922), 225 Ill App 403, 410, 411, and Kurzawa v. Brummel (1957), 14 Ill App2d 473, 476, 144 NE2d 839, and it was properly refused.

 Plaintiff's instruction No. 9 informed the jury of the statutory requirement that "the driver

77

of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use said horn when upon a highway." It was not improper to give this instruction here, because it was a question of fact for the jury to consider whether it was "reasonably necessary" for the bus driver to sound his horn.

■ Defendant argues that it was error for the court to refuse defendant's instruction No. 19, because it would have clarified the duty of defendant's driver to give a warning to plaintiff. Instruction No. 9 required no clarification, and instruction No. 19 was properly refused.

■ ■ Considering the instructions as a whole, we believe the jury was properly instructed as to the law applicable to this case. This is the ultimate test (Hack v. New York, C. & St. L. R. Co. (1960), 27 Ill App2d 206, 222, 169 NE2d 372), and where the jury has not been misled and the complaining party's rights have not been prejudiced by minor irregularities, such errors will not be deemed ground for reversal. Duffy v. Cortesi (1954), 2 Ill2d 511, 516, 119 NE2d 241.

This record shows that this was a prolonged trial and a sharply contested and close case. The trial judge was diligent in his efforts to see that both parties received a fair trial, and we find no reversible error in the conduct of the trial or in the giving of instructions. Therefore, the judgment is affirmed.

Affirmed.

BURMAN and ENGLISH, JJ., concur.