JENONA N. MORSE, Plaintiff-Appellant *v.* ANNA MAE HARDINGER *et al.*, Co-executors of the Estate of John D. Hardinger, Deceased, Defendants-Appellees.

(No. 12987; ▮▮▮▮▮▮▮▮▮▮

Fourth District—January 22, 1976.

GREEN, J., specially concurring.

Philip C. Zimmerly, of Champaign, and Edward J. Kionka, of Belleville, for appellant.

Jack E. Horsley and Richard F. Record, Jr., both of Craig and Craig, of Mattoon, for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Plaintiff-appellant Jenona Morse sued Dr. John D. Hardinger in a medical negligence action to recover damages for a loss of vision she suffered after taking the drug Aralen. The jury returned a verdict in favor of the defendants and plaintiff appeals, citing errors in the trial court's handling of evidence and in the instructions to the jury.

Dr. Hardinger had been family physician for the Morse family since at least 1949. In August 1955, Jenona Morse came to him with complaints he diagnosed as arthritis. He began giving monthly injections of Acthar Gel (ACTH), a drug used in the treatment of rheumatoid arthritis.

In September 1957, Dr. Hardinger first prescribed Aralen for Mrs. Morse. This drug, taken orally in tablet form, was prescribed as treatment for rheumatoid arthritis. Dr. Hardinger again prescribed Aralen for Mrs. Morse in March 1958 and February 1961.

Around 1959, certain damaging side effects were first noted in connection with Aralen. These effects began to be reported in medical literature in the period 1960-1963. By 1962, the Food and Drug Administration required that these side effects be noted on the package insert. Among these effects was chloroquine retinopathy, a condition of retinal

degeneration in which progressive damage causes a doughnut-shaped blur called a "scotoma" to form in the area of central vision. If the use of Aralen is discontinued immediately, some of the toxic effects may be reversed as the body slowly excretes the Aralen over a long period of time. Beyond a certain point, however, the damage becomes irreversible and eventually manifests itself as total blindness.

Mrs. Morse began experiencing eye problems around 1959. She reported these problems to Dr. Hardinger as early as 1964 and also consulted several eye specialists between 1959 and 1968. It was not until September of 1968 that her condition was diagnosed as chloroquine retinopathy. By that time, she had taken 1885 grams (4½ pounds) of Aralen, or over 18 times the limit set in 1962, after reports of the drug's toxicity were confirmed. All this Aralen had been dispensed by Bridges Drug Store in Mattoon pursuant to the prescription of February 1961. By February of 1974, Mrs. Morse's visual efficiency was 44 percent of normal in the right eye and 39 percent of normal in the left eye, not taking into account constriction of her visual field as a result of the disease. Her eye condition was described at trial as permanent and progressive.

At trial, there was testimony that Mrs. Morse suffered from osteoarthritis rather than rheumatoid arthritis, but that it is possible for a person to have had rheumatoid arthritis at one time without showing the effects of it at a later date. Aralen was never recommended for treatment of osteoarthritis, which is a disease separate from and easily distinguishable from rheumatoid arthritis.

■■ Prior to trial but after submitting to a discovery deposition by the plaintiff, Dr. Hardinger died in an accident unrelated to the suit. Portions· of that discovery deposition were offered into evidence by the plaintiff at trial as admissions. The material offered included the doctor's statements that he had prescribed the drug by phone and not followed up with a written prescription, that he had phoned in his prescription without his record on the patient in front of him and had never noted the prescription in his records, that he could not recall the number of tablets prescribed or the strength of the individual tablets and had no written record of that information, and that he had received complaints of visual problems from his patient as early as 1964, four years before the discovery by another physician that her vision problems were related to the drug Aralen. These statements were admissions against interest and inconsistent with defendants' position at trial and consequently admissible in evidence. (*Nelson v. Union Wire Rope Corp.*, 31 Ill.2d 69, 199 N.E.2d 769; *Sidwell v. Sidwell*, 75 Ill.App.2d 133, 220 N.E.2d 479.)

In toto, the plaintiff offered fourteen passages from the doctor's discovery deposition as admissions. The trial court judge did not consider them individually to evaluate their admissiblity, but agreed that they should be allowed into evidence as admissions.

The defense immediately and consistently objected to the admission of any material from the discovery deposition and argued that, if any portions were to be read, the entire deposition must be read under Supreme Court Rule 212(c):

> "If only a part of a deposition is read or used at the trial by a party, any other party may at that time read or use or require him to read any other part of the deposition which ought in fairness to be considered in connection with the part read or used." (Ill. Rev. Stat. 1973, ch. 110A, par. 212(c).)

After lengthy debate, the trial court judge concluded that there would be a continuing problem with excerpting surrounding material so as to place the admissions in proper context and decided that if the deposition was admissible at all it must be admissible in its entirety.

Thereupon, over plaintiff's objection, virtually the entire discovery deposition was admitted into evidence, with the exception of certain exchanges between counsel. The material which came into evidence under this decision included comments by the doctor that he believed no prescriptions to be refillable unless so labeled, but he presumed that he would have prescribed the amount of the drug recommended by literature published at that time, that he imagined there must have been some improvement in his patient's condition after she took the drug or he would not have represcribed it, and much other self-serving material which, while helpful in telling the doctor's side of the story, was not necessary to protect against the creation of a distorted impression of the doctor's admissions.

In reference to Rule 212(c), it has been said:

> "[I]t was never intended by this rule that unrelated questions and answers may be read, which do not explain, modify or reconcile the question and answer upon which a witness may be impeached. However, 'in fairness' can be abused, and the interpretation of 'in fairness' requires the use of sound discretion by a trial judge." (*Schmitt v. Chicago Transit Authority*, 34 Ill. App.2d 67, 73, 179 N.E.2d 838, 841.

In *Bessette v. Loevy*, 11 Ill.App.2d 482, 138 N.E.2d 56, a witness testified on direct examination that she developed double vision after an accident and that she had referred to this disability in her discovery deposition. The defendant attempted to introduce the entire discovery

deposition by way of impeachment, but the trial court concluded that the impeachment value would be outweighed by the admission of unrelated matters in the discovery deposition.

■■ While *Bessett* and *Schmitt* deal with the use of discovery depositions for purposes of impeachment, we see no reason to impose a different standard where portions of such depositions are introduced as admissions. Though the fairness referred to in Rule 212(c) must be insured, it must not be used as an excuse to sweep irrelevant material into evidence. It was incumbent upon the trial court to consider the fourteen passages offered as admissions individually, and decide whether there was other material which must in fairness be read to protect against a distorted impression of the doctor's statements. To admit the entire deposition was error sufficient to require remandment for retrial. Assuming that the plaintiff once again offers portions of the discovery deposition as admissions, it will be incumbent upon the trial court to consider the admissions individually and determine how much surrounding material must be admitted in the interest of fairness.

■■ After virtually the entire text of the discovery deposition was admitted at trial, plaintiff's lawyer attempted to put her on the stand under section 2(2) of the Evidence Act:

> "If the deposition of the deceased * * * is admitted in evidence on behalf of the representative, any adverse party or interested person, if otherwise competent, may testify concerning the same matters admitted in evidence." (Ill. Rev. Stat. 1973, ch. 51, par. 2(2).)

The court concluded that the admission of the discovery deposition did not waive the statute. We do not agree. This conclusion of the trial court is at odds with the spirit of the statute as it has been elaborated by the supreme court:

> "To construe the statute so as to allow the heirs to give their own version of what appellant said, without allowing appellant to give hers, or either to deny or explain, would lead to gross injustice, and render the statute partial and unequal in its operation on the rights of parties when it was intended to operate equally and impartially." (*Blanchard v. Blanchard*, 191 Ill. 450, 454, 455, 61 N.E. 481, 482.)

While section 2 of the statute was probably not intended to encompass admission of discovery depositions, simply because the writers did not anticipate the admission into evidence of a discovery deposition, the spirit of that section and indeed of the entire act requires that where one party has been allowed to testify as to the subject matter the op-

position also be allowed to testify. The purpose of the act was not to disadvantage the living, but to put the parties on an equal footing. (*Vancuren v. Vancuren*, 348 Ill.App. 351, 109 N.E.2d 225.) To the extent that the admitted material constitutes "testimony" by decedent as to his encounters with plaintiff, plaintiff should be allowed on retrial to testify as to her version of the same occurrences. Should the court determine to admit only such material as is offered by the plaintiff as admissions, then the statute will not be waived. The essential element is fairness, and the trial court must make the initial decision as to the extent to which fairness necessitates letting the plaintiff respond.

■■ In the course of the trial, plaintiff sought to introduce into evidence an admission included in Dr. Hardinger's answer to plaintiff's complaint. Plaintiff had alleged that in 1957 she was suffering an illness which Hardinger had diagnosed and was treating as rheumatoid arthritis. He denied the allegation. Because of expert testimony that Aralen and "ACTH," the two medications prescribed by Dr. Hardinger, were useful only in treating rheumatoid arthritis (and certain other conditions not relevant here), this response was an admission against decedent's interest. Nevertheless, the trial court refused to admit evidence of the allegation and response. While our holding that the matter must be remanded because of other errors makes it technically unnecessary to decide this issue, we note that the question is likely to arise again on retrial. Admissions in pleading are proper evidence. (*O'Brien v. Brown*, 403 Ill. 183, 85 N.E.2d 685), and it was error for the trial court to refuse this evidence.

■■■ Finally, plaintiff contends there were prejudicial errors in the jury instructions. First, she objects to the giving of a certain instruction on proximate cause. We note that this instruction was offered by plaintiff, so that she retains no right to object to it on appeal. That the instruction was not her first choice is legally insignificant; had she wished to preserve the error, she should have objected to the failure to give her first choice instruction and raised that as an issue on appeal. Plaintiff also contends it was error for the trial court to offer an instruction to the jury on contributory negligence, since there was no evidence of contributory negligence on the part of the plaintiff. While we agree that the record before us contains no evidence of contributory negligence, we find no motion for a directed verdict on that issue in this record. A trial court may direct in plaintiff's favor on the issue of contributory negligence. (*Dertz v. Pasquina*, 59 Ill.2d 68, 319 N.E.2d 12; *Smith v. Bishop*, 32 Ill.2d 380, 205 N.E.2d 461.) Should the record upon retrial be similarly devoid of any evidence of contributory negli-

gence, the trial court should honor a demand by the plaintiff for a directed verdict on this issue.

This cause is remanded to the trial court for a retrial in accordance with the holdings herein.

Reversed and remanded.

TRAPP, P. J., concurs.

Mr. JUSTICE GREEN, specially concurring:

I concur with the majority that the judgment should be reversed and the case remanded for a new trial. I agree that portions of decedent's discovery deposition, required by the trial court to be read in evidence, went beyond the requirements of the "fairness" doctrine. Because of the prejudice created thereby, I agree that reversible error occurred. I also agree that the admissions in defendants' pleadings should have been admitted into evidence.

Although the question is close, I disagree with the majority ruling that plaintiff's incompetency under section 2 of the Evidence Act was waived by the requirement of the trial court at. defendants' request that most of the evidence deposition of defendants' decedent be presented with decedent's admissions. In discussing the problem of fairly dealing with the offer of portions of a writing or conversation, McCormick on Evidence § 56 (1972) states: "It seems, however, that to guard against the danger of an ineradicable false first impression, the adversary should be permitted, at least within the court's discretion, to *require the proponent to prove* so much as pertains to the fact sought to be proved, that is, all that explains or is useful in interpreting the part proved." (Emphasis added.) Although, as further stated by McCormick, the majority rule requires the opponent to present the evidence placing the excerpt from a statement in context, Rule 212(c) clearly permits the procedure advocated by McCormick. The effect of the procedure is that the proponent is required to present excerpts in fair context. The material presented to do so is evidence presented by the proponent, here the plaintiff and not the opponents, here the defendants.

The trial court is granted discretion as ·to the amount of context material that it may require to be presented. (*Schmitt v. Chicago Transit Authority.*) Here that discretion was exceeded and we are properly granting a new trial. Plaintiff is thus adequately protected from prejudice. I know of no case, however, where the incompetency of section 2 of the Evidence Act has been held to be waived except by the presentation of evidence by a protected party or person aligned therewith. Since that was not the case here, I cannot conclude that waiver occurred.

Since we are in agreement that a new trial should be granted because of the excess of material required to be presented with the admissions, a discussion of all of the legal ramifications of what occurred is scholastic. The majority opinion, however, gives directions for retrial. The opinion rules that presentation of decedent's admissions in his deposition, if presented without context material, would not work a waiver of plaintiff's incompetency. If I understand the opinion correctly, though, it further rules that a requirement that these admissions be placed in context, even if limited only to matters properly required in fairness, would work a waiver "if fairness necessitates letting the plaintiff respond."

The admissions from the discovery deposition were admissible because they were admissions and not because they were part of a discovery deposition. The majority opinion would seem to indicate that if an incompetent party introduced, out of context, an admission of a protected party's decedent, the requirement by the court that other material be presented to place the admission in context, if concerning a transaction with the incompetent party, would work a waiver if "fairness" so required. I do not believe that to be the law. I consider the more sound rule to be that no waiver of section 2 incompetency can arise from a proponent being required to present context material with admissions. If a proponent wishes an admission in evidence, he should not be able to gain advantage by being required to put the admission in context. If, as here, the proponent is required to present material not required to give context and is prejudiced thereby, reversal should be ordered.

I also disagree with portions of the next to last paragraph of the majority opinion concerning instructions on contributory negligence where the evidence is such that there is no issue on that point. In *Zydeck v. Chicago & Northwestern Ry. Co.*, 333 Ill.App. 388, 77 N.E.2d 830, the defendant contended that reversible error occurred because a peremptory instruction was given which made no mention of an affirmative defense. No motion for directed verdict had been made as to that defense. The appellate court held the instruction to be proper because there was no evidence to support the affirmative defense. By analogy, the jury should be instructed that plaintiff must prove her exercise of due care only when that is an issue for the jury's determination regardless of whether a motion for directed verdict has been made.