THE PEOPLE, FOR USE OF TIRZA A. JOHNSTON

v.

JAMES J. BORDERS ET AL.

*Guardian and Ward—Principal and Surety—Receipt in Full—Agency —Estoppel—Evidence—Secs. 2 and 4, Chap. 57, R. S.—Instructions.*

1. In an action to recover from the sureties on a guardian's bond the amount shown to be due upon the settlement of his account, this court holds that the contention that the ward, without receiving the same, executed a receipt in full therefor for the purpose of discharging said guardian and the sureties upon his bond, and made an agreement with the former to act as her agent and to handle for her benefit, and not to pay over the balance so found to be due, is unsupported by the evidence.

2. The fact that the ward signed such receipt did not estop her after the lapse of six or seven years from asserting her claim against said sureties, as it does not appear that the receipt caused any change of conduct on their part.

3. An instruction attempting to recite the facts of a case should embrace all the facts.

4. An instruction stating that a ward must demand payment from her guardian in his lifetime, and upon his death give notice to the sureties on his bond of non-payment as conditions precedent to recovery, is erroneous.

5. Secs. 2 and 4, Chap. 57, R. S., do not prohibit a ward from answering in proceedings of this character, inquiries as to whether a deceased guardian ever paid any of the moneys due from him, and whether he was ever constituted agent to handle same.

[Opinion filed June 15, 1889.]

APPEAL from the Circuit Court of Randolph County; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. CHARLES W. THOMAS, for appellants.

Guthrie procured his ward's receipt by fraud. He told her he could not make a settlement without it when the receipt had nothing to do with his settlement. She was his niece and confided in him. She had not been of age sixty days, and was, on account of her sex and inexperience, presumptively ignorant of all legal proceedings. She signed

The People v. Borders.

the receipt because her uncle told her it was a legal formality necessary to permit him to make a settlement of his accounts, and he perpetrated a gross fraud when he procured it.

The case of Gillette v. Wiley, 19 N. E. Rep. 287, decided by the Supreme Court of this State at the June term, 1888, is conclusive of this case. In that case the guardian procured his ward's receipt by fraud and procured an order of the County Court discharging him from the guardianship. One of his sureties who had taken a mortgage from the guardian to secure himself, on the strength of the discharge released the mortgage, and the guardian sold the mortgaged land and became insolvent. The surety was, nevertheless, held on the bond. In this case the sureties have not been induced to act to their loss, and there was no discharge of the guardian by the court. The principle of estoppel can not here be invoked.

The ward has not done anything in this case which has caused the sureties to change their condition or to be in any worse position than they would otherwise have been. They are not released unless the guardian is, and the guardian is only released by actually paying the money due.

The theory of the defendants, as expressed in their fifth instruction given to the jury, that it was the ward's duty to demand her money and notify the sureties that it was not paid, is new law not found in any of the adjudicated cases and not approved of in the case referred to, nor is it possible to find any law requiring a ward to make a demand or bring a suit on a guardian's bond within six years, as is, by that instruction, supposed.

Messrs. KOERNER & HORNER, for appellees.

Inasmuch as the plaintiff, as an interested person, could not have testified in an action against the estate of Guthrie, it follows logically and necessarily that she could not be heard in the action against those who were defending in the same right as the estate.

The statute intends, in allowing a party to be a witness, that it shall be in cases only where both parties are upon equal grounds. Merrill v. Atkin, 59 Ill. 20; Langley v.

Dodsworth, 81 Ill. 86 ; Branger v. Lucy, 82 Ill. 91; Stone v. Cook, 79 Ill. 424.

But independent of the second section of the act on evidence, the plaintiff is disqualified to testify as to anything said or done by Guthrie by the fourth section, which provides that no adverse party shall be a competent witness to testify to any conversation or admission by any deceased party or joint contractor, in a suit against the surviving partner or joint contractor. This applies to penal bonds. Henry v. Tiffany, 5 Ill. App. 548.

Reeves, J.   At the May term, 1874, of the County Court of St. Clair County, George W. Guthrie was appointed guardian of Tirza A. Johnston and her three sisters, and gave bond as such guardian, with James J. Borders and Thomas M. Pollock as sureties, in the sum of $40,000.   The bond was in the statutory form and bound the guardian, among other things, at the expiration of his trust, to pay over and deliver all the estate, title papers and effects remaining in his hands, or due from him to the person or persons entitled thereto.

Tirza A. Johnston reached her majority on the 23d day of September, 1881.   On the 2d day of November, 1881, Guthrie appeared in the County Court with the ward and made a final statement of his account as her guardian, showing that he owed her $4,298.80.   Below the statement of his account the county clerk wrote a receipt to Guthrie for that sum, and an acknowledgment that the statement of account was correct and the ward signed it.   Guthrie, the guardian, died early in 1888, and shortly after, this suit was instituted against the sureties on the guardian's bond to recover the amount due the ward as shown by the statement of account filed in the County Court November 2, 1881.   Several pleas were filed and the case went to a hearing upon the second plea of payment, and replication thereto, and a plea which set up in substance that on the 2d day of November, 1881, in the County Court of St. Clair County and in presence of said ward, who was then over eighteen years old, Guthrie made his final settlement as guardian, from which it appears that there was due her on

that day the sum of $4,298.80, which the court approved, and that the ward, understanding all the facts and for the purpose of having the estate settled and the guardian discharged and the sureties on his bond discharged, made an agreement with said Guthrie to the effect that she should execute a receipt discharging the guardian and sureties, and that said Guthrie should act as her agent and retain the said sum of money for her benefit, and pay the same to her when requested, and for said purpose executed her certain acknowledgment in writing and filed the same in said court, in and by which she acknowledged having received said sum in full of all claims she had against said Guthrie as her guardian, whereby the bond became void.

To this plea a replication was filed denying, *seriatim,* all the allegations of the plea, except that of the settlement and amount due. Upon the trial of the case, the defendants introduced in evidence a book of account kept by Guthrie, beginning November 2, 1881, with Tirza A. Johnston. To this no objection is shown to have been interposed. Had such objection been made, it would be difficult to state any legal ground upon which this evidence was competent.

The receipt of the ward plainly made out a *prima facie* case of payments, but the other evidence in the case conclusively shows that no money was paid by the guardian to the ward when the receipt was given.

The guardian was the uncle of the ward, and had her full confidence, and it is shown that she was made to believe by her uncle that it was necessary for her to sign such receipt to enable him to make a settlement with the County Court. Not only is it shown by the county clerk that no money was paid when receipt was given, but George B. Blair testifies that Guthrie told him he had not paid the money. He says: " I asked him about taking the girls to Belleville and getting them to sign a receipt, and he said he took them to sign receipts so that he could settle with the court. I asked him how it was that he did not turn over to them any money. He said the court did not compel him to turn over the money to them. I asked him if he had turned it over since. He said

he had not, and that he still had their guardian money and
had it loaned out."

The allegation in the plea that the ward, after majority,
made an agreement with the guardian to the effect that she
should execute a receipt discharging the guardian and sure-
ties, and that Guthrie should act as her agent and retain the
money due her for her benefit and pay the same to her when
requested, finds very little support in the testimony. It will
be seen that the County Court did not enter an order dis-
charging the guardian. The full text of the record of the
court is as follows: "And now comes George W. Guthrie,
guardian of Tirza A. Johnston, ward, and presents to the
court his final settlement with said ward, showing a balance
due ward of $4,298.80, which is by the court examined and
approved, and ordered to be filed and recorded." The testi-
mony of the mother of the ward is relied on to prove the
allegation in the plea above set forth. We do not find that
any fair construction of her testimony proves or tends to
prove said allegation. A number of questions were asked
this witness by the defendants, who called her, to which
objections were interposed and overruled, which we think
should have been sustained. We know of no rule of law that
would warrant such a cross-examination of a witness by the
party calling such witness, as was permitted of this witness.

George B. Blair testified that in a conversation with Guth-
rie in October, 1886, witness asked him, after Guthrie stated
he had the girls' guardian money loaned out, "Are you their
agent—ever appointed you agent to loan that money?" He
said they had not, but he was acting with Mrs. Fellows, inde-
pendent of the girls. In relation to Tirza's money, he said
"he did not intend to pay her until she got married, or a short
time afterward, to see how things opened out." It is urged
that the fact that Tirza got some money from Guthrie to put
in the store with Sherrard, is proof tending to show that
Guthrie held her money as agent. Mrs. Sherrard swears that
Guthrie told her this was rent money. These girls owned a
large tract of land, and after they became of age their uncle
acted for them in leasing this land and in collecting the rents.

This agency in leasing their land and collecting the rents would seem to be the only support to be found for the theory that after these girls became of age, Guthrie held the money due to them from him as guardian, as agent, and not as guardian. We fail to find in the whole testimony in the case, any sufficient support of the allegations of the plea.

The fifth instruction given for defendants was vicious in several particulars. An instruction which attempts to recite the facts of a case should embody all the facts. Singling out particular facts, and calling the attention of the jury to them without noticing the other facts of the case, is always objectionable. Again, this instruction, so far as it would lead the jury to believe that a demand by the ward upon the guardian in his lifetime, for payment, and after his death, notice to the sureties that her money had not been paid to her, were necessary to be shown before she could recover, was clearly erroneous.

It is incidentally urged that the fact the ward signed a receipt in full under the circumstances shown in this case would, after the lapse of six or seven years, estop her from asserting her claim against the sureties. An estoppel in respect of the element here involved, is where one, by acts or declarations, represents a certain state of facts to exist and thereby brings about a change of conduct in another, he can not afterward be heard to assert a contrary state of facts if injury would result to the party who had acted, relying upon the truth of the representations. The guardian was not discharged. It does not appear that the sureties were lulled into inaction by the signing of this receipt. It is pertinent to inquire, what were these sureties led to do, or not to do, by the fact that this ward had signed a receipt to her guardian for the amount found due her? Nothing, so far as this record shows.

It does not appear that either of these sureties ever knew of the giving of the receipt. It was their duty, if they desired to be relieved from liability on the bond, to see to it that the guardian discharged his trust. Had they gone to the record of the County Court and found this receipt, they would also

have discovered that the guardian had not been discharged. Inquiry of the clerk why discharge had not been ordered by the court, would doubtless have revealed the fact that no money was paid when the receipt was given.    It may be safely assumed that if the county judge was made acquainted with the fact that no money was paid by the guardian to his ward when the receipt was signed, a discharge would not have been granted except upon proof of the payment of the money due. We can not believe that any court having charge of the interests of infants would think of discharging a guardian simply upon the production of a receipt from his ward, who was a young girl, barely eighteen years of age, and the niece of the person appointed her guardian, by virtue of his relationship to her, when the court knew that no money had been paid her.

The case of Gillette v. Wiley, decided by the Supreme Court of this State, and reported in 19 N. E. Rep. 287, presents facts much stronger in support of an estoppel than are found in this case.    The surety in that case had required the guardian to give him a mortgage on his farm to indemnify him as such surety.    When the ward arrived at his majority the guardian made his final report, which showed a certain sum due the ward.    The account was examined and approved by the court, and the guardian directed to pay the amount due to the ward.    Shortly afterward he produced in court the ward's receipt for the amount found due, and thereupon the guardian was discharged by order of court.    The guardian applied to the surety to release the mortgage given him as indemnity, and the surety went to the County Court and examined the records in the case and found that the guardian had made final settlement and been discharged by the court.    The surety then released the mortgage; the guardian sold the farm and subsequently became insolvent.    The ward, some ten years after the discharge of the guardian, instituted proceedings to recover the money due him from the surety and succeeded. True it was claimed in that case that the receipt was procured by fraud, and excuse shown for the delay in proceeding

The People v. Borders.

to recover his money.  On the other hand it was contended that by the ward's carelessness in signing what turned out to be a receipt to his guardian in full, he put it in the power of the guardian to practice a fraud upon the surety in gaining a release of the mortgage which the surety held as an indemnity.

. It should be stated that the ward in that case had first to have the order of the County Court discharging the guardian set aside, and for this reason brought his suit in equity.  In the opinion the court say: "It is clear, however, that the guardian owed a duty to his ward which could only be discharged by performance of the condition of his bond, and that no one except the ward had power to release the obligation of the guardian or his surety.  Before the County Court could enter its order discharging the guardian, it must appear to that court that the guardian had complied with its former order and paid over to his ward all money in his hands belonging to said ward.  Under the circumstances here shown, the mere order of the County Court would not avail to release the guardian, and if the guardian is not released by it, it is equally clear that the surety would not thereby be released." Can it be contended for a moment that the signing of the receipt in this case, when no money was paid, released Guthrie?  If not, then the sureties are not released.

The record discloses that during the trial, Tirza A. Johnston was sworn as a witness by plaintiff and asked if she was interested in the event of the suit and answered that she was. This question was then asked:  "Did Guthrie, your guardian, ever pay you any of the money found due you on his final settlement as your guardian?"  The defendants objected to the putting and answering this question, because witness was interested in the event of the suit, and defendants were defending as representatives of a deceased person, George W. Guthrie, the principal of the bond, and the court sustained the objection.   This witness was asked the further question:  "Did you ever constitute George W. Guthrie your agent as to any money due you from him as your guardian?"  A like objection was made and sustained.  This ruling of the court is assigned as error.  The action of the

court below is sought to be sustained by Sec. 4, Chap. 57, Revised Statutes, on the subject of evidence. This section provides: " In any action, suit or proceeding by or against any surviving partner or. partners, joint contractor or contractors, no adverse party, or person adversely interested in the event thereof, shall by virtue of section one of this act be rendered a competent witness to testify to any admission or conversation by any deceased partner or joint contractor," etc.

This provision excludes adverse party or person adversely interested from testifying to any admission of, or conversation with, the deceased joint contractor, and does not preclude such adverse party or person adversely interested, from testifying to facts other than admissions of, or conversations with, the deceased partner or joint contractor. Neither of these questions called for such admissions or conversations, and the objections should have been overruled, unless under some other provision of the statute the witness was rendered incompetent. It is urged that she was incompetent under Sec. 2 of the same chapter. That section provides that no party to an action or person directly interested therein, shall be allowed to testify of his own motion or in his own behalf, where any adverse party sues or defends as the trustee or conservator of any idiot, etc., or as the executor, administrator, heir, legatee, or devisee of any deceased person. The defendants in this case did not defend in any of these capacities. Section 4 was made to cover a case where the defendants defend as do these defendants, and as we have seen, that section only precludes the adverse party or person adversely interested from testifying to any admission or conversation of the deceased joint contractor. We think the court erred in sustaining the objections to these questions. If the answers to these questions should include any admission of the deceased guardian or any conversations with him, that should be excluded; but the questions as framed did not call for any such admission or conversation.

The judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*