**SPRAYING SYSTEMS CO.**

v.

**WILLIAM G. SMART COMPANY, INC.**

No. 91 C 1049.

United States District Court,
N.D. Illinois.

Feb. 22, 1993.

Reconsideration Denied March 19, 1993.

**466**

Marc D. Janser, Pedersen & Houpt, Chicago, IL, for plaintiff.

Francis X. King, Grosse Pt. Woods, MI, James A. Davids, Hoogendoorn, Talbot, Davids, Godfrey & Milligan, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

This action has already reached the final pretrial order ("FPTO") stage, which is the necessary prerequisite to setting the case for trial. Since then the parties have submitted motions in limine that require resolution by this Court so that they may complete their planning for conduct of the trial.

This Court has now reviewed those motions in detail. They pose some questions that have required a review of all that has gone before in this action. And as a result of that review this Court has become convinced that one critical facet of its earlier analysis was mistaken and therefore requires correction.

This Court's January 3, 1992 oral ruling denied a motion that plaintiff Spraying Systems Co. ("Spraying Systems") had somewhat inaccurately characterized as one for summary judgment. That oral ruling was then followed a few months later by a written opinion (the "Opinion," 789 F.Supp. 257 (N.D.Ill.1992))[1] dealing with another aspect of the case. Those two decisions shared a common focus: the operation of certain provisions of the Illinois Dead Man's Act (the "Act," Ill.Rev.Stat. ch. 110, ¶ 8–201 and *id.* ¶ 8–301[2]), and the impact of those provisions on the identity of potential witnesses and on the permitted scope of their testimony. It is essential that this Court deal with those questions because what is at issue in this case is the content of an oral agreement

---

1. Any citations to the Opinion will take the form "Opinion at—," referring to the page citation in F.Supp. without repeating the volume number.

2. Because the text reflects the statutory citation form that applied at the time the Opinion was written, this opinion will not employ the new ILCS numbering system that went into effect on January 1, 1993. All further references to the Act will simply take the form "Section—." That usage comports with the Illinois General Assembly's use of that word and of the symbol "§" in its enactments, even though the publisher of the Smith–Hurd annotated version of the Illinois statutes had shifted to "¶" instead.

entered into a full quarter century ago in a meeting between William Smart ("Smart"), who is now the principal in defendant William G. Smart Company, Inc. ("Smart Company"), and the now-deceased founder of Spraying Systems, Svend Bramsen ("Bramsen").

This Court had thus stated in its oral ruling, and had then reconfirmed in the Opinion (en route to its discussion there of whether two prospective witnesses other than Smart would be silenced by provisions of the Act), that Section 8–301 literally barred Smart from testifying as to the content of his 1967 face-to-face negotiation with Bramsen. But some further reflection, triggered by this Court's going back to the point of beginning for purposes of the current motions in limine, has persuaded this Court that the case law in Illinois (which provides the rules of decision in this diversity case) really calls for a different conclusion here. To see why that is so, a brief rehearsal of the gravamen of this case is in order.

Spraying Systems originally brought this declaratory judgment action in the Circuit Court for the Eighteenth Judicial District, DuPage County, Illinois (from which court Smart removed it to this District Court), seeking this relief:

> The entry of a binding declaration, having the force of a final judgment, that under the terminated oral contract, Spraying Systems does not have the obligation to pay Smart, and Smart does not. have the right to receive, any further commissions, including commissions on shipments into the State of Louisiana of Spraying Systems products purchased after the termination of the parties' oral contract.

From the very nature of Spraying Systems' Complaint, in which it expressly *alleged* the existence of an oral agreement. and placed the terms of that agreement in issue, Spraying Systems necessarily undertook to establish what the terms of that oral agreement were from its own perspective.

■ Under Illinois law there is no question that the burden of proof in a declaratory judgment action in a case such as this rests squarely on the plaintiff. In *Board of Trade v. Dow Jones & Co.*, 98 Ill.2d 109, 115, 74 Ill.Dec. 582, 585, 456 N.E.2d 84, 87 (1983) the Illinois Supreme Court addressed this argument, which was said by the declaratory judgment action plaintiff in that case to be supported by several earlier Illinois Appellate Court decisions:

> Settled law states the. proper rule—the party asserting rights has the burden of proof, and the party alleged to violate those rights who files a declaratory judgment action, is not required to prove a negative.

After it had characterized that issue as one of first impression on its docket, the Supreme Court responded flatly "We do not agree with plaintiff's contention" (*id.*). It. then went on to explain (*id.*):

> Although this court has not considered the specific question, the rule is well stated in *International Hotel Co. v. Libbey* (7th Cir. 1946), 158 F.2d 717, 721:

>> When an issue of fact is tendered by the complaint and denied by the answer, the plaintiff must prove its complaint, even though it is a complaint for a declaratory judgment.[3]

■ In this case the issue of fact that is directly tendered by Spraying Systems' Complaint and is denied by Smart Company's Answer is the question whether the oral agreement that was reached by Smart and Bramsen back in 1967 did or did not include a provision for Smart to continue to receive commissions after the termination of his sales representative relationship with Spraying Systems. Thus this action centers around, and its result will be controlled by, what was or was not agreed upon in the key conversation between Smart and Bramsen.[4]

---

3. [Footnote by this Court] Spraying Systems attempts to distinguish *Board of Trade* to avoid its impact. But the claimed ground of distinction simply ignores what the Illinois Supreme Court said in unequivocal terms in that case.

4. Only one other person was present during that 1967 conversation between Smart and Bramsen—Spraying Systems' then Sales Manager Joe Pelej ("Pelej"). Pelej, like Bramsen, is no longer living.

When Spraying Systems earlier moved for summary judgment, it unquestionably recognized that as the essential nature of this action (even though it did not acknowledge its own burden of proof on the issue), for it tendered in support of its motion a host of affidavits of its remaining personnel whose tenure with Spraying Systems dated back to 1967. All of those affidavits were in identical form, and each of them stated this in Paragraph 3:

> 3. William G. Smart, Jr. and Spraying Systems entered into an oral agreement in 1967 for Mr. Smart to perform duties as a manufacturer's representative for Spraying Systems. Mr. Smart subsequently incorporated William G. Smart Company, Inc. ("Smart"), and continued to perform duties as a manufacturer's representative for Spraying Systems through the corporate entity.

Then after Paragraphs 4 and 5 had described certain terms that the oral agreement *did* contain according to Spraying Systems, each affidavit went on to say:

> 7. I have no knowledge (a) of any agreement by Spraying Systems to pay Smart commissions on sales made after termination, (b) of any evidence to suggest that such an agreement was made, or (c) of any assertion by Smart before approximately late 1990 or 1991 that Spraying Systems had made such an agreement. I do not believe that any such agreement was made.
>
> 8. I do not know of anyone who has knowledge (a) that Spraying Systems made such an agreement, (b) that there is any evidence to suggest that such an agreement was made, or (c) that, at any time before approximately late 1990 or 1991, Smart had asserted that Spraying Systems had made such an agreement.
>
> 9. I never heard Svend Bramsen or anyone else at Spraying Systems state that Spraying Systems would pay or had promised to pay Smart commissions on sales made after termination.

Spraying Systems urges that *it* is not offering any proof of what Bramsen said to Smart or what Smart said to Bramsen. But because the oral agreement was indeed entered into between those two individuals (perhaps the one matter in this case on which there is no dispute), the only purpose and effect of the just-quoted statements by Spraying Systems' surviving personnel is to demonstrate that the two-party Smart–Bramsen conversation did *not* contain a discussion about post-termination commissions. Spraying Systems essays its own proof of that negative by inference, and it tries to compel Smart to parry that inference with both arms tied behind his back because of the prohibition contained in the Act.

To put the matter simply, if the triers of fact were to credit the witnesses that Spraying Systems has offered to testify about the terms of the oral agreement on which it has based its Complaint for declaratory judgment, by definition those factfinders would be deciding that the only human beings who were parties to that oral agreement—Bramsen and Smart—had *not* discussed and arrived at an understanding about post-termination commissions. By having thus put that factual question into issue, Spraying Systems must be viewed as having waived Smart's disability under the Act to testify directly about the issue.

Neither side has identified any Illinois case on all fours with this one—hardly a surprise, given the context in which this action arises—but the principle that has just been stated here is entirely consistent with the one case on which both litigants relied (and that *is* surprising) during the course of briefing Spraying Systems' motion for summary judgment [5]: *Schuppenhauer v. Peoples Gas Light & Coke Co.*, 30 Ill.App.3d 607, 332 N.E.2d 583 (1st Dist.1975). In the portion of *Schuppenhauer* relevant to this case (*id.* at 612, 332 N.E.2d at 589) the court said of the Act:

> [N]either the statutory language nor its purpose to place parties upon an equal footing may be evaded by indirection. Interested witnesses cannot testify to the substance and legal effect of a conversation in place of the actual words spoken.

---

5. As Opinion at 258 reflects, this Court denied that motion in its January 3, 1992 oral ruling.

That perspective on the Act obviously has direct applicability here. What Spraying Systems is urging—and what by the very nature of things it is undertaking to prove—is what it claims Bramsen did *not* say in his critical conversation with Smart. It seeks to do so by indirection, by showing the understandings and beliefs of its still-living employees based in part on what Bramsen did *not* say to them while he was still alive. In the language of *Schuppenhauer*, that process is directly tantamount to those "[i]nterested witnesses ... testify[ing] to the substance and legal effect of [the Bramsen–Smart] conversation in place of the actual words spoken." And to continue the *Schuppenhauer* language, that would surely "evade[ ] by indirection" the Act's "purpose to place [the] parties upon an equal footing."

It is of course true that under the circumstances of this case a truly level playing field simply cannot be constructed for the parties. That ceased to be possible when Bramsen and Pelej died. But *Schuppenhauer* exemplifies the notion that the statute may not be used by a party such as Spraying Systems both as a sword and as a shield—that Spraying Systems cannot be allowed to provide its own inferential proof as to the nature of the conversation with its own deceased agent, while at the same time rendering it impossible for Smart Company to counter that showing by tendering the only kind of direct proof that could possibly be available to Smart Company for that purpose: Smart's testimony about the conversation itself.

*Schuppenhauer* is not alone in Illinois jurisprudence in recognizing that a waiver of a witness' incompetency under the Act may be triggered by a situation in which a party tries to introduce its own version of a conversation that involved a now-deceased person, meanwhile attempting to block the opponent from countering that evidence with an account of the conversation itself. See, e.g., *Morse v. Hardinger*, 34 Ill.App.3d 1020, 1025–26, 341 N.E.2d 172, 176 (4th Dist.1976), stating such an approach to waiver of the Act's prohibition and citing *Vancuren v. Vancuren*, 348 Ill.App. 351, 109 N.E.2d 225 (3d Dist.1952) for this proposition:

[T]he spirit of ... the entire act requires that where one party has been allowed to testify as to the subject matter the opposition also be allowed to testify. The purpose of the act was not to disadvantage the living, but to put the parties on an equal footing.

Nor is that a recent refinement of the judicial view of the Act's purpose—see also such earlier Illinois Supreme Court cases as *Van Meter v. Goldfarb*, 317 Ill. 620, 623, 148 N.E. 391, 392 (1925) and *Blanchard v. Blanchard*, 191 Ill. 450, 454–55, 61 N.E. 481, 482 (1901).

In sum, this Court concludes that its earlier ruling, in which it foreclosed Smart from testifying based on the Act's blockage, did not accurately reflect the combined force of (1) Illinois case law as to the burden of proof in this declaratory judgment action coupled with (2) Illinois case law that limits the application of the Act (even though it would be literally called into play by its own terms) where such singular unfairness would be the result. Instead this Court holds that Spraying Systems has waived its right to invoke the Act, so that Smart may indeed testify as to his 1967 conversation with Bramsen.

In light of that new and sharply different perspective on the competency of Smart himself to testify in this action, the current motions in limine have become considerably easier to resolve. Each of the litigants seeks to bar testimony that its adversary would proffer, in each instance proposed to be presented by other sales representatives who also date back to the time that Bramsen was still living. For its part Spraying Systems wants to block the testimony of two representatives who say that they too reached precisely the same type of oral agreement with Bramsen that Smart claims to have negotiated as to post-termination commissions, while Smart Company wants to prevent a half dozen other representatives from testifying that they themselves had no such express agreement with Bramsen.

As for the witnesses whom Smart tenders, Spraying Systems is just wrong in urging that such testimony would present a situation calling for exclusion under Fed.R.Evid. 404(b). Many of Spraying Systems' current personnel who go back a number of years have said that to their knowledge *all* of the company's oral agreements with sales representatives were the same (indeed three of Spraying Systems' people have so stated in

sworn testimony). Thus Smart is free to argue that the testimony of the two representatives in question (the two that were dealt with in the Opinion) will provide directly probative evidence confirming the terms of Smart's own agreement as identical with their own.

■ On the other side of the coin, Smart Company argues that the circumstances disclosed by the depositions of the half dozen representatives proposed by Spraying Systems renders their testimony excludable on hearsay grounds. Smart Company also urges that other facets of the relationship through which each of those persons became a sales representative are a further disqualifying factor.

But what Spraying Systems proposes is not at all a hearsay use of that testimony. Instead the sales representatives' testimony is being offered for purposes of identifying *what* was said in conversations with Bramsen, not the *truth* of what was said—the classic distinction between the hearsay and nonhearsay use of prior out-of-court statements (see Fed.R.Evid. 801(c)). And the principle that has already been enunciated here about the basic fairness with which the Act must be administered would be promoted by permitting those witnesses (except for Bob Johnson, who did not discuss the subject of his relationship with Bramsen himself) to testify as well, leaving it to counsel to argue to the jury the weight and significance to be ascribed to the testimony of the several witnesses.[6]

In that respect, one final point that has obviously not dawned on Spraying Systems should be made before this opinion leaves the subject of its proffered group of sales representatives. When Spraying Systems seeks to introduce their testimony, its only basis for arguing the admissibility of that testimony is that it is somehow probative as to the relevant issue here: the content of *Smart's* conversation with the now-deceased Bramsen. Thus Spraying Systems is once again proposing "by indirection" to present "tes-

ti[mony] to the substance and legal effect of [the Smart–Bramsen] conversation in place of the actual words spoken" (*Schuppenhauer*). That then drives one final nail into the coffin that has buried Spraying Systems' attempted reliance on the Act to exclude Smart's direct testimony as to "the actual words spoken" in that conversation.

Accordingly both sides' motions to bar the testimony of other sales representatives are denied. This opinion turns, then, to the remaining motions in limine.

■ Spraying Systems also seeks to preclude Smart Company from introducing evidence as to the value of the termination payments provided for in the written contracts that Spraying Systems entered into during 1987 and 1988 to supplant its earlier oral agreements with all sales representatives. Needless to say, the specific contents of those agreements may not be placed before the jury, lest it draw an inference that the amounts specified there should support Smart Company's claim as to quantification of the value of the post-termination commissions of which it has assertedly been deprived. As Spraying Systems points out, other ingredients in those written agreements differ from the preexisting oral arrangement,[7] so that no such inference as to the comparability of amounts would be permissible.

But Smart Company has pointed out that Spraying Systems' Vice President of Industrial Sales Ted Butterfield has testified in this fashion in the course of his deposition (Dep. 128, emphasis added):

Section No. 6 is compensation on termination. It defines the amount of the termination payment that would be made to the sales rep. That termination payment would be made by the successor sales rep. *This had been done in other cases. I believe it was part of the agreement, as we understood it.* This is probable [sic] much more specific here in terms of the amounts and the amount of money to be paid.

---

6. It appears that the other facts that Smart Company claims ought to bar the testimony of the five sales representatives tendered by Spraying Systems really go to the weight and not the admissibility of that testimony.

7. In particular the written agreements contain a lengthy post-termination restrictive covenant. As Smart Company's activities once it parted company with Spraying Systems reflect, the old oral agreements contained no limitations at all on post-termination competition.

Given that testimony, Smart Company *is* entitled to bring before the factfinders the *fact* that Spraying Systems has now entered into written contracts providing for post-termination commissions and that Spraying Systems "believe[d] it was part of the agreement, as we understood it."

■ Next Smart Company asks that Spraying Systems not be permitted to introduce at trial evidence on a number of subjects:

    a. The amount of commissions paid to defendant prior to termination from 1978 through 1988;

    b. Summaries reflecting the yearly amount of commissions paid to defendant with an analysis reflecting whether the amount of commissions for a particular year reflects an increase or decrease from the prior year;

    c. Comparisons between defendant and other Spraying Systems sales representatives regarding the amount of commissions paid for the months of January, February and March, 1988;

    d. Defendant's post-termination representation of another spray nozzle manufacturer;

    e. Plaintiff's payment of commissions to the successor representative for the same reorders for which defendant claims a commission.

None of the arguments advanced by Spraying Systems to support its position carries any persuasion that such evidence is probative on the dispute in this case—the existence or nonexistence of an oral agreement in 1967 under which Smart Company would continue to be entitled to post-termination commissions on sales to pretermination customers. Because Smart Company's claim is based on what it urges was an express agreement that contained no restrictive covenant, all the cases cited by Smart Company (*Stein v. Malden Mills, Inc.*, 9 Ill.App.3d 266, 270–71, 292 N.E.2d 52, 57 (1st Dist.1972), *Scheduling Corp. of America v. Massello*, 151 Ill. App.3d 565, 571, 104 Ill.Dec. 944, 949, 503 N.E.2d 806, 811 (1st Dist.1987) and *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.*, 762 F.2d 557, 560 (7th Cir.1985)) support its position as to the lack of relevance of the matters that Spraying Systems wants to delve into.

■ Finally, Spraying Systems seeks to urge that Smart Company's cashing of commission checks from Spraying Systems—including one that was sent with an April 14, 1989 letter describing "Spraying Systems policy" as to the period for which commissions were payable and stating "Therefore, this is your final commission payment"—evidences a waiver of the claim that Smart Company now advances in this lawsuit. That simply is not a fair reading of the communications between the parties that resulted in the breach of their long-standing relationship. At that time Spraying Systems wanted to enter into the new written form of agreement referred to earlier, while Smart Company wanted to continue under the existing oral agreement. When they reached impasse on that score, Spraying Systems wrote Smart Company that it was going to select a new sales representative for the territory. Smart Company promptly responded with a November 15, 1988 letter that said in part:

> From the above, it can only be concluded that Spraying Systems Company has unilaterally terminated my contract. Of course, I reserve all the rights of W.G. Smart Co., Inc. and myself which result from the unilateral termination by Spraying Systems Company.

That of course is the antithesis of waiver, and there is nothing to suggest that any subsequent events (including the cashing of the small commission checks that Spraying Systems then sent to Smart Company, the last payment being accompanied by the already-quoted April 1989 letter) reflected a change in Smart Company's position. On that issue as well, Spraying Systems' position is unsound.

Because this opinion has changed the ground rules for this action so dramatically by reconsidering this Court's earlier ruling under the Act, it makes sense to hold an early status conference to discuss whether anything other than the scheduling of the case for trial is now called for.